1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10
11
12
13
14

JOSHAUA RYAN KIRBY,

Plaintiff,

v.

PIERCE COUNTY JAIL,

Defendant.

Case No. C07-5322 BHS/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**February 29, 2008**

15  Before the Court is the motion for summary judgment of Defendant Pierce County Jail (the

16  Pierce County Detention and Correction Center ("PCDCC")), seeking summary dismissal of

17  Plaintiff's claims. (Dkt. # 15).  In support of its motion, Defendant submits the Declaration of Lt.

18  Louis Genga.  (Dkt. # 16 with attachments).  Plaintiff has not responded to Defendant's motion,

19  although he had ample time to file a response.  Under Local Rule 7 (b)(2) failure to file papers in

20  opposition to a motion may be deemed by the court as an admission the motion has merit.

21  After careful review of Defendant's motion, supporting evidence, the balance of the record,

22  and viewing the facts in the light most favorable to the Plaintiff, the undersigned recommends that

23  Defendant is entitled to summary dismissal of the claims against it.

24  **I.  INTRODUCTION**

25  Plaintiff was incarcerated at various times at the PCDCC (July 13, 2006 to September 5,

26  2006; December 30, 2006 to February 17, 2007; and May 23, 2007 to June 13, 2007), and alleges

27  that during those times, he was forced to shower while handcuffed.  (Dkt. # 5, p. 3).

28  REPORT AND RECOMMENDATION - 1

1

## II. UNDISPUTED FACTS

2          The following facts are not in dispute:

3          On twelve occasions, Plaintiff has been incarcerated at PCDCC, often for crimes of

4    violence.  (Dkt. # 16, Exh. 1 (conviction of theft with a deadly weapon); Exh. 2 (guilty of assault

5    with intent to rob); Exh. 3 (purse snatching)).  Plaintiff also exhibited violent behavior during his

6    incarceration, including threats to and assaults upon both fellow prisoners and PCDCC staff.  *Id.*,

7    Exh. 4.

8          PCDCC reports reflect the following reports on Plaintiff:

9          a)     On July 28, 2006, calling a female correctional officer a "fucking bitch" and jumping
                  downstairs to get away from escorting officers;

10

11         b)     On February 28, 2007 writing to staff that he was "going to kill [another prisoner's]
                  bitch ass" and that he was "NOT playing w/you punks" and would otherwise "open
                  up a can of whip ass;"

12

13         c)     On June 15, 2007 grabbing the hand of a female correctional officer and attemtping
                  to pull it through his cell's trap door;

14         d)     June 21, 2007 threatened correctional officer "just wait until you open the trap door
                  in the morning;"

15

16         e)     On June 22, 2007 yelling at the same correctional officer that he was a "fucking
                  bitch, fucking faggot, fucking bitch assed faggot;" and

17         f)     On July 11, 2007 spitting at a fellow inmate.

18   *Id.*, Exh. 4.

19         Upon entry into the PCDCC, Plaintiff's record of violence in and out of the PCDCC and his

20   past institutional behavioral problems during his twelve prior incarcerations resulted in his being

21   classified as a high risk "maximum" security prisoner.  *Id.*, pp. 1-2.  Plaintiff was housed in a secure

22   area of the jail for his own safety and the safety of corrections officers and other inmates.  *Id*, p. 2.

23         Plaintiff was familiar with the grievance process used at PCDCC and had used it for other

24   occasions while incarcerated.  *Id.*  However, PCDCC records do not reflect that during Plaintiff's

25   incarceration did he ever submit a grievance about being restrained while taking a shower, or for a

26   physical assault upon his person by any corrections officers.  *Id.*

27                              ## III.  STANDARD OF REVIEW

28   REPORT AND RECOMMENDATION - 2

1    In examining Defendant's motion, the Court must draw all inferences from the admissible

2    evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d

3    1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material

4    fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving

5    party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex*

6    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7    Once the moving party has met its burden, the opposing party must show that there is a genuine

8    issue of fact for trial.  *Matsushita Elect. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87

9    (1986).  The opposing party must present significant and probative evidence to support its claim or

10   defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  "A

11   plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that

12   belief, is no more than speculation or unfounded accusation about whether the defendant really did

13   act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028

14   (9th Cir. 2001).

15   **IV.  DISCUSSION**

16   **A.    Failure to Exhaust**

17   The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies

18   prior to filing a complaint in federal court.  The relevant portion of the PLRA states:

19
20              No action shall be brought with respect to prison conditions under
              section 1983 of this title, or any other Federal law, by a prisoner
              confined in any jail, prison, or other correctional facility until such
21              administrative remedies as are available are exhausted.

22   42 U.S.C. § 1997e(a).

23   This requirement "applies to all prisoners seeking redress for prison circumstances or

24   occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  Further, "[a]ll 'available' remedies"

25   must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings."

26   *Id.* at 524.   Inmates must exhaust prison grievance remedies before filing suit if the grievance

27   system is capable of providing any relief or taking any action in response to the grievance, and must

28   REPORT AND RECOMMENDATION - 3

1   do so in a timely manner.  *Booth v. Churner*, 531 U.S. 956, 121 S. Ct. 1819, 1825 (2001); *Woodford*

2   *v. Ngo*. 548 U.S. 81, 126 S.Ct. 2378, 2386-87 (2006).   The purpose of the exhaustion requirement

3   is to "reduce the quantity and improve the quality of prisoner suits; . . . [and] afford corrections

4   officials . . . opportunity to address complaints internally. . . . 42 U.S.C. § 1997e(a).   *McKart v.*

5   *United States*, 395 U.S. 185, 195 (1969).

6          In deciding whether the PLRA exhaustion standard has been met, it must be remembered

7   that § 1997e(a) is an affirmative defense.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

8   Defendants have the burden of raising and proving the absence of exhaustion.  *Id*.  There can be no

9   "absence of exhaustion" unless some relief remains "available," and a defendant must demonstrate

10  that pertinent relief remained available, whether at unexhausted levels of the grievance process or

11  through awaiting the results of the relief already granted as a result of that process.  *Brown v.*

12  *Valoff*, 422 F.2d 926, 937 (9th Cir. 2005).

13         Attached to Plaintiff's Complaint are kites dated August 2, 2006 and August 18, 2006.

14  (Dkt. # 5, Attach. 1).  Plaintiff states that he wants to grieve that the males at Level 1 are

15  handcuffed when females are not and that he is placed in handcuffs while on hour out and in the

16  shower. *Id*.  Handwritten responses on the kites state that all Level I inmates are restrained, that

17  Plaintiff was placed in restraints due to his custody status and classification per policy, and that the

18  issue is not grievable.  *Id*

19         There is no evidence that Plaintiff submitted an initial grievance and/or that he appealed the

20  response he received that the issue was not grievable.  Plaintiff alleges that he filed no grievances

21  concerning the facts relating to his Complaint because the matter "is not grievable because it is

22  policy."  (Dkt. # 5, p. 2).

23         Conversely, Defendant's summary judgment evidence reflects that Plaintiff was familiar

24  with the grievance process used in the Pierce County Jail and had used it for other occasions while

25  incarcerated.  (Dkt. # 16, p. 2).  PCDCC records reflect that during Plaintiff's incarceration, he

26  never submitted a grievance about being restrained while taking a shower or for a physical assault

27  upon his person by any corrections officer.  *Id*.

28  REPORT AND RECOMMENDATION - 4

1    Accordingly, the record reflects that Plaintiff did not exhaust his administrative remedies.

2 In addition, a review of the undisputed evidence reflects that Plaintiff has failed to demonstrate a

3 constitutional violation sufficient to state a claim under 42 U.S.C. § 1983.

4  **B.      Stating a Claim Under 42 U.S.C. § 1983**

5    To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the

6 defendant must be a person acting under color of state law, (2) and his conduct must have deprived

7 the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United

8 States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element

9 of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v.*

10 *Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff

11 fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil

12 Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That

13 plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself,

14 necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S.

15 344 (1986).

16    In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon

17 which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A

18 defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory

19 responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58

20 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have

21 personally participated in the acts alleged. *Id.*  Vague and conclusory allegations of official

22 participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Peña v.*

23 *Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

24    **1.      Plaintiff's Condition of Confinement Claim**

25    Plaintiff alleges that during various periods of time during his incarceration at PCDCC, he

26 had to shower while handcuffed.  (Dkt. # 5, p. 3).

27    The Eighth Amendment protects prisoners from cruel and unusual punishment.  It is well

28 REPORT AND RECOMMENDATION - 5

1   established that the Eighth Amendment requires prison officials to "take reasonable measures to

2   guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Liability

3   under the Eighth Amendment is imposed only if the inmate can establish that he was subjected to

4   "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."

5   *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

6       A prison official violates the Eighth Amendment only when two requirements are met: (1)

7   the inmate must show that he is incarcerated under conditions posing a substantial risk of serious

8   harm; and (2) the prison official must have a "sufficiently culpable state of mind."  *Farmer v.*

9   *Brennan*, 511 U.S. 825 (1994).  The Eighth Amendment standard requires proof of both an

10  objective and a subjective component. First, the deprivation alleged by the inmate must be,

11  objectively, "sufficiently serious".  *Farmer*, 511 U.S. at 834.  Second, the prison officials must

12  know of and must deliberately disregard the risk of harm to the inmate. *Id*. at 842. If one of the

13  components is not established, the court need not inquire as to the existence of the other. *Helling*,

14  509 U.S. at 35. In proving the objective component of the Eighth Amendment standard, an inmate

15  must establish that there was both some degree of actual or potential injury, and that "society

16  considers the [acts] that the plaintiff complains of to be so grave that it violates contemporary

17  standards of decency to expose anyone unwillingly" to those acts. *Helling*, 509 U.S. at 36; *see also*

18  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

19      A prison condition only constitutes "unnecessary and wanton infliction of pain" when the

20  condition violates "evolving standards of decency" or is "so totally without penological justification

21  that it results in gratuitous infliction of suffering." *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.

22  1982) (citations omitted).

23      Courts have concluded that requiring an inmate in disciplinary segregation to shower in

24  handcuffs does not give rise to an Eighth Amendment claim of cruel and unusual punishment.

25  *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (placing inmate in restraints, including

26  handcuffs and shackles, while inmate showered was not "cruel and unusual punishment" in

27  violation of Eighth Amendment, despite inmate's concern that he might fall down and hurt himself

28  REPORT AND RECOMMENDATION - 6

1  while showering; purpose of restraints was to protect staff, which was security imperative,

2  particularly in view of damage inmate had inflicted on staff and inmates); *Branham v. Meachum*, 77

3  F.3d 626, 631 (2nd Cir. 1996) (requiring an inmate on "lockdown" to shower while wearing leg

4  irons does not state Eighth Amendment claim).

5        The undisputed evidence reflects that Plaintiff posed a security risk.  Upon entry into

6  PCDCC, Plaintiff's record of violence in and out of the PCDCC and his past institutional behavioral

7  problems during his twelve prior incarcerations resulted in his being classified as a high risk

8  "maximum" security prisoner.  (Dkt. # 16, pp. 1-2).  Plaintiff was housed in a secure area of the jail

9  for his own safety and the safety of corrections officers and other inmates.  *Id*, p. 2.  The record also

10  reflects that during Plaintiff's most recent incarceration, from July 13, 2006 through August 13,

11  2007, he was often violent towards corrections officers and other inmates.  *Id*.

12        There is no evidence from which it may be inferred that prison officials were deliberately

13  indifferent to Plaintiff's personal or medical needs or that they acted with malice or intent to cause

14  him harm.  Indeed, Plaintiff makes no claim, and there is no evidence in the record, that he has

15  suffered any injury as a result of the practice of shackling him in the shower, which is cognizable

16  under the objective component of Eighth Amendment claims.  *See Lemaire*, 12 F.3d at 1457.  As

17  noted by the Ninth Circuit in *Lemaire*, shackling a dangerous inmate in a shower does not create a

18  sufficiently unsafe condition, even if the floors of the shower are slippery and Plaintiff might fall

19  while showing.  *Id*.  "Slippery prison floors . . . do not state even an arguable claim for cruel and

20  unusual punishment.  *Id*., citing *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989).

21        Viewing the undisputed evidence in the light most favorable to Plaintiff, the undersigned

22  concludes that Plaintiff was not subjected to unnecessary and wanton infliction of pain contrary to

23  contemporary standards of decency.  The record reflects that under the factual circumstances

24  shown, the additional restraints did not violate Plaintiff's Eighth Amendment rights.

25        Accordingly, the undersigned recommends that Defendants' motion for summary judgment

26  on Plaintiff's claim concerning his condition of confinement be granted.

27

28  REPORT AND RECOMMENDATION - 7

**2.     Respondent Superior Liability**

Defendant also argues that dismissal of Plaintiff's Complaint is appropriate as Plaintiff failed to allege a policy or practice as the moving force of the claimed constitutional violation. (Dkt. # 15, p. 4).  As the undersigned has determined that Plaintiff's Eighth Amendment claim of cruel and unusual punishment is without merit, it need not reach this issue.[1]

## V.  CONCLUSION

For the reasons stated above the Court should **GRANT** the motion for summary judgment of Defendant (Dkt. # 15).  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on **February 29, 2009**, as noted in the caption.

DATED this   11th   day of February, 2008.



Karen L. Strombom
United States Magistrate Judge

---

[1]A liberal reading of Plaintiff's complaint and its attachments reveals, however, that Plaintiff was advised by Jail personnel that his placement in restraints was "per policy."

REPORT AND RECOMMENDATION - 8